**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| KOHLDER MANUFACTURING COMPANY, INC., individually and on behalf of all others similarly situated, | CASE NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| TECUMSEH PRODUCTS COMPANY, TECUMSEH COMPRESSOR COMPANY, TECUMSEH DO BRASIL, LTDA, TECUMSEH DO BRASIL USA, LLC, WHIRLPOOL CORPORATION, WHIRLPOOL, S.A., EMBRACO NORTH AMERICA, INC., DANFOSS A/S, DANFOSS, INC., DANFOSS COMMERCIAL COMPRESSORS, LTD., DANFOSS SCROLL TECHNOLOGIES, LLC, DANFOSS TURBOCOR COMPRESSORS, INC., APPLIANCES COMPONENTS COMPANIES, SPA, ACC USA LLC, PANASONIC CORPORATION, PANASONIC CORPORATION OF NORTH AMERICA, EMERSON CLIMATE TECHNOLOGIES, INC., COPELAND CORPORATION LLC, CR COMPRESSORS, LLC, and SCROLL COMPRESSORS, LLC, | |
| Defendants. | |

## **COMPLAINT**

Plaintiff, Kohlder Manufacturing Company, Inc., by its undersigned attorneys, individually and on behalf of all others similarly situated, files this class action complaint against defendants named herein for treble damages and other relief under the antitrust laws of the United States. The allegations set forth below are based upon information and belief pursuant to the investigation of counsel.

## NATURE OF THE ACTION

1.     This lawsuit is brought as a class action on behalf of Plaintiff Kohlder Manufacturing Company, Inc. ("Plaintiff") and all individuals and entities who purchased compressors and/or compressor products in the United States directly from defendants, their predecessors, successors, parents, or controlled subsidiaries and affiliates from at least as early as January 1, 1996 and continuing until at least February 16, 2009 ("Class Period"). "Compressors," as used herein, are compressors used in refrigeration, air conditioning and cooling applications. "Compressor Products," as used herein, are Compressors as well as products manufactured, marketed and/or sold by defendants that contain a Compressor manufactured by a defendant.

## JURISDICTION AND VENUE

2.     Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, for treble damages and other relief, including reasonable attorneys' fees and costs of suit, for defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

4.     Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C. § 1391(b) and (c) because, during the Class Period, one or more of the defendants resided, transacted business, was found, or had agents in this district and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district.

5.     By Order dated June 9, 2009, the Judicial Panel on Multidistrict Litigation found that a number of actions relating to allegations that defendants conspired to fix, raise, maintain,

and stabilize the price at which refrigerant compressors and products made with compressors were sold in the United States involved common factual questions, that centralization was appropriate, and that the Eastern District of Michigan is an appropriate transferee forum for this litigation.

## PARTIES

6.      Plaintiff Kohlder Manufacturing Company, Inc. is a New Jersey corporation with its principal place of business in Camden, New Jersey.  During the Class Period, Plaintiff purchased Compressor Products from one or more of the defendants.  The prices Plaintiff paid for the Compressor Products were, as a result of the conspiracy herein alleged, higher than they otherwise would have been, and as a result of the alleged conspiracy, Plaintiff was injured in its business and property by reason of the antitrust violations alleged herein.

7.      Defendant Tecumseh Products Company ("Tecumseh") is a Michigan corporation with its principal place of business in Ann Arbor, Michigan.  Defendant Tecumseh, by itself, or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.  Tecumseh is one of the world's largest producers of Compressor Products.  Its products are used in residential and commercial refrigerators, freezers, water coolers, dehumidifiers, window air conditioning units and residential and commercial central system air conditioners and heat pumps.  Tecumseh manufactures its Compressor Products in the United States, Canada, Brazil, France, India, and Malaysia.

8.      Defendant Tecumseh Compressor Company is a Delaware corporation with its principal place of business in Ann Arbor, Michigan.  Defendant Tecumseh Compressor Company is a wholly owned subsidiary of Defendant Tecumseh Products Company.  Defendant

Tecumseh Compressor Company, by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

9.  Defendant Tecumseh do Brasil, Ltda. ("Tecumseh Brasil") is a Brazilian corporation with its principal place of business in Sao Carlos, Brazil. Tecumseh Brasil is wholly owned by Defendant Tecumseh Products Company. Defendant Tecumseh Brasil, by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period. Tecumseh Brasil is Tecumseh's largest foreign manufacturing source.

10. Defendant Tecumseh do Brasil USA, LLC ("Tecumseh Brasil USA") is a Delaware limited liability company. Tecumseh Brasil USA is wholly owned by defendant Tecumseh Brasil. Defendant Tecumseh Brasil USA, by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

11. Defendant Whirlpool Corporation ("Whirlpool") is a Delaware corporation with its principal place of business in Benton Harbor, Michigan. Defendant Whirlpool, either itself or through one of its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

12. Defendant Whirlpool, S.A. f/k/a Embraco S.A. ("Whirlpool S.A.") is a Brazilian corporation with its principal place of business in Joinville, Brazil. Defendant Whirlpool S.A., either directly or indirectly, is a wholly-owned subsidiary of Defendant Whirlpool Corporation. Prior to May 2006, Whirlpool S.A. operated under the name Embraco S.A. Defendant Whirlpool Corporation has owned Whirlpool S.A. since approximately 1996. Defendant

4

Whirlpool S.A., either itself or through one of its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

13.     Defendant Embraco North America, Inc. ("Embraco NA") is a Delaware corporation with its principal place of business in Suwanee, Georgia.  Defendant Embraco NA is a wholly-owned subsidiary of Defendant Whirlpool, S.A., which in turn is wholly-owned by Defendant Whirlpool Corporation.  Defendant Embraco NA marketed and/or sold Compressor Products in this district and the United States during the Class Period.

14.     Defendant Danfoss A/S is a Danish corporation with its principal place of business in Nordborg, Denmark.  Defendant Danfoss A/S, either by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period through its Refrigeration and Air-Conditioning Division.

15.     Defendant Danfoss Inc. is a Delaware corporation with its principal place of business in Baltimore, Maryland.  Defendant Danfoss, Inc. is an indirectly owned subsidiary of defendant Danfoss A/S.  Defendant Danfoss Inc. manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

16.     Defendant Danfoss Commercial Compressors, Ltd. is a Delaware corporation with its principal place of business in Lawrenceville, Georgia.  Defendant Danfoss Commercial Compressors, Ltd., either directly or indirectly, is a wholly owned subsidiary of defendant Danfoss A/S.  Defendant Danfoss Commercial Compressors, Ltd., by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

17.     Defendant Danfoss Scroll Technologies, LLC f/k/a Scroll Technologies, LLC is a Delaware limited liability company with its principal place of business in Arkadelphia, Arkansas.

Defendant Danfoss Scroll Technologies, LLC, either directly or indirectly, is wholly owned by defendant Danfoss A/S. Defendant Danfoss Scroll Technologies, LLC manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

18.     Defendant Danfoss Turbocor Compressors, Inc. ("Danfoss Turbocor") is a Delaware corporation with its principal place of business in Tallahassee, Florida. Defendant Danfoss Turbocor, either directly or indirectly, is a wholly owned subsidiary of Defendant Danfoss A/S. Defendant Danfoss Turbocor manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

19.     Defendant Appliances Components Companies SpA ("ACC") is an Italian corporation with its principal place of business in Pordenone, Italy. Defendant ACC, by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period. Defendant ACC manufactures its Compressor Products in Italy, Austria and China.

20.     Defendant ACC USA, LLC ("ACC USA") is a limited liability company with its principal place of business in Madison, Alabama. Defendant ACC USA is wholly owned by Defendant ACC. Defendant ACC USA manufactured marketed and/or sold Compressor Products in this district and the United States during the Class Period.

21.     Defendant Panasonic Corporation f/k/a Matsushita Electric Industrial Co., Ltd. ("Panasonic") is a Japanese corporation with its principal place of business in Osaka, Japan. Defendant Panasonic, by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

22.     Defendant Panasonic Corporation of North America is a Delaware corporation with its principal place of business in Secaucus, New Jersey. Defendant Panasonic Corporation

of North America is a wholly owned subsidiary of Defendant Panasonic Corporation. Defendant Panasonic Corporation of North America manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

23.     Defendant Emerson Climate Technologies, Inc. ("Emerson Climate") is a Delaware corporation with its principal place of business in Sidney, Ohio. Defendant Emerson Climate is a wholly owned subsidiary of the publicly traded company Emerson Electric Co. Defendant Emerson Climate, by itself or through its subsidiaries, manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

24.     Defendant Copeland Corporation, LLC ("Copeland") is a Delaware limited liability company with its principal place of business in Rushville, Indiana. Defendant Copeland is wholly owned by Defendant Emerson Climate. Defendant Copeland manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

25.     Defendant CR Compressors LLC ("CR") is a Delaware limited liability company with its principal place of business in Rushville, Indiana. Defendant CR is wholly-owned by Defendant Emerson Climate. Defendant CR manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

26.     Defendant Scroll Compressors LLC ("Scroll Compressors") is a Delaware limited liability company with its principal place of business at Sidney, Ohio. Defendant Scroll Compressors is wholly owned by Defendant Emerson Climate. Defendant Scroll Compressors manufactured, marketed and/or sold Compressor Products in this district and the United States during the Class Period.

27.     Whenever this complaint refers to any act, deed or transaction of any corporation or limited liability company, the allegation means that the corporation or other business entity

engaged in the act, deed or transaction by or through its officers, directors, agents, employees, shareholders or representatives while they were actively engaged in the management, direction, control or transaction of the business or affairs of the corporation or other business entity.

## CO-CONSPIRATORS

28.     Various other persons, firms and corporations, not named as defendants in this complaint, have participated as co-conspirators with defendants in the violations alleged herein, and aided, abetted and performed acts and made statements in furtherance of the conspiracy.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on its own behalf and on behalf of all others similarly situated (the "Class"). The Class is defined as:

> All persons or entities (excluding governmental entities, defendants, and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing) who purchased Compressor Products directly from any of the defendants, or any present or former parent, subsidiary or affiliate thereof, at any time during the period from at least January 1, 1996 through February 16, 2009.

30.     The members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable.

31.     Plaintiff's claims are typical of the members of the Class because Plaintiff and all members of the Class were damaged by the same wrongful conduct of defendants alleged herein. Plaintiff and the Class purchased Compressor Products at artificially maintained, non-competitive prices established by the actions of defendants and their unnamed co-conspirators in connection with the wrongful conduct alleged herein.

32.     Plaintiff will fairly and adequately protect the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the Class. In addition, Plaintiff

8

is represented by counsel who are experienced and competent in the prosecution of complex class action antitrust litigation.

33. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members, if any, in that defendants have acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

    a. Whether defendants conspired with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully fix, raise, maintain and/or stabilize the prices of Compressor Products;

    b. Whether defendants' conduct violated Section 1 of the Sherman Act;

    c. The existence, duration and illegality of the contract, combination or conspiracy alleged in this complaint;

    d. Whether defendants took affirmative steps to conceal the contract, combination or conspiracy alleged herein;

    e. The effect upon the extent of injuries sustained by Plaintiff and members of the Class and the appropriate type and/or measure of damages; and

    f. Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

34. Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication

of relatively small claims by certain class members, who could not otherwise afford to individually litigate an antitrust claim against large corporate defendants.

35. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

36. There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action and no superior alternative exists for the fair and efficient adjudication of this controversy on behalf of Plaintiff and the members of the Class.

## THE COMPRESSOR MARKET AND INDUSTRY

37. A Compressor is a device that compresses a refrigerant gas. Compressors are part of the system that creates cold air by compressing cool fluid. When the gas is later permitted to expand, it absorbs and transfers heat, producing a cooling effect, which forms the basis for a wide variety of refrigeration and air conditioning products.

38. Typically, Compressors are used in residential and commercial refrigerators, freezers, dehumidifiers, window air conditioning units, central air conditioners and heat pumps, commercial vending machines and water coolers.

39. Because Compressors are homogenous, commodity products, purchasers of Compressors Products make purchase decisions based largely, if not entirely, on price. However, due to defendants' anticompetitive conduct as alleged in this complaint, defendants have been able to fix, raise, maintain and stabilize the price of Compressors at artificially high levels.

40. Demand for Compressors is highly inelastic. Thus, producers of Compressors have been able to raise their prices without losing sales revenues. There are also no product

substitutes for Compressors. Demand inelasticity is a market condition that facilitates the existence of an anti-competitive conspiracy, and facilitated the existence of the conspiracy alleged herein.

41. There are substantial barriers to entry into the Compressors' market. A new entrant into the business would have to incur multimillion dollar costs, including manufacturing plant and equipment, energy, transportation, distribution infrastructure, skilled labor and longstanding customer relationships. With such barriers to entry, those few firms that have the available resources and significant start-up capital to enter the market and benefit from economies of scale are able to reduce their average cost by producing more output. The firms existing in the market have the motivation to keep other firms out of the market to keep their share up, and also to collude in order to keep prices up.

42. The market for Compressors is highly concentrated. A small number of producers control a major share of the Compressor market. This concentration makes the market conducive to price-fixing.

## GOVERNMENT ANTITRUST INVESTIGATIONS

43. In mid-February, 2009, the media reported that a number of Compressor manufacturers were under investigation for potential antitrust violations. A joint operation, known as "Operation Zero Degrees," was launched by the United States Department of Justice, the Brazilian authorities, and the European Commission to investigate an alleged cartel among the manufacturers of Compressors.

44. According to sources from the Brazilian government, searches and seizures made in connection with Operation Zero Degrees "yielded remarkable evidence" of the cartel, including the exchange of sensitive information to eliminate competition.

45. On or about February 17, 2009, the media reported that Brazilian competition authorities raided the offices of Whirlpool S.A. in connection with its potential involvement in a world-wide price fixing and market allocation conspiracy in the market for Compressor Products. News articles reported that the Brazilian authorities seized bags of computers and laptops. Following the raid, the Brazilian police, which helped conduct the raid, stated, "the initial investigation shows that the companies involved had agreed, through their managers, to fix prices and also exchanged commercially sensitive information, harming free competition and consumers." Moreover, the Brazilian police noted that the companies involved in the conspiracy had been exchanging confidential information for more than 12 years. Finally, it was reported that the investigation began near the end of 2008 when one of the companies advised authorities of the cartel in exchange for administrative and criminal immunity.

46. The Brazilian press reports that 2008 losses from the cartelization of hermetic Compressors could range from BRL68 million to BRL125 million, or US$230 million to US$425 million. According to Ana Paula Martinez, Director of Brazil's Department of Economic Protection and Defense, due to the cartel, Compressor prices are between 10% to 20% higher than they would have been in a competitive market.

47. On February 18, 2009, the European Commission ("EC"), the European Union's antitrust watchdog, revealed in a press release that on February 17, 2009, the EC carried out unannounced inspections at the premises of Compressor makers in several member states for possible breach of antitrust rules, which prohibit anticompetitive practices such as price fixing and customer allocation. The inspections were carried out in several EU member states including Denmark, Italy and Germany.

48. On February 19, 2009, the United States Department of Justice, also confirmed, through a spokesperson, that it is investigating possible antitrust violations in the multibillion-dollar refrigeration compressor industry and that the DOJ is "cooperating with other foreign competition authorities." In addition, the DOJ confirmed the existence of a grand jury and that grand jury subpoenas had been issued to several defendants.

49. In an SEC filing dated February 19, 2009, Whirlpool stated, "[o]n February 17, 2009, we received a grand jury subpoena from the U.S. Department of Justice requesting documents relating to an antitrust investigation of the global compressor industry. Whirlpool subsidiaries in Brazil and Italy were visited on the same day by competition authorities seeking similar information."

50. Defendant Tecumseh has also disclosed that it has received subpoenas from antitrust authorities in the U.S. and Brazil regarding an investigation into possible price fixing in the Compressor Products market.

51. Danfoss A/S has stated that its offices in Denmark, Italy, Germany and the United States were raided by antitrust regulators as part of an investigation into possible price-fixing in the Compressor Products market.

52. On February 23, 2009, Defendant Tecumseh Products Company, disclosed in a Form 8-K filed with SEC, that an internal memorandum was prepared and sent to all Tecumseh employees by Ed Buker, Tecumseh Products Company's Chairman, President and CEO, which stated:

> In mid-2008 [Tecumseh was] made aware of certain activities that appeared to have occurred in prior years that did not appear to conform to our policies and standards of ethical conduct. Upon discovering these acts, the Company commenced an internal investigation . . . . We also promptly brought the matter to the attention of authorities, and we have been cooperating with them in further

information gathering. As a result of this action, [Tecumseh] entered into amnesty agreements in the U.S., Brazilian and EU jurisdictions.

## **ANTICOMPETITIVE CONDUCT**

53. Beginning at least as early as January 1, 1996 and continuing until at least February 16, 2009, the exact dates being currently unknown to Plaintiff, defendants entered into an unlawful contract, combination or conspiracy with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully raise, fix, maintain and/or stabilize the prices of Compressor Products in violation of Section 1 of the Sherman Act.

54. The conspiracy alleged herein consisted of a continuing agreement, understanding or concert of action by defendants and their co-conspirators, the substantial terms of which were to raise, fix or maintain the prices of Compressor Products sold in the United States and worldwide at artificially high and non-competitive levels.

55. In furtherance of the unlawful conspiracy, upon information and belief, each of defendants and their co-conspirators have committed overt acts including, among others:

  a. Participating in meetings and conversations to discuss the Compressor Products' market in the United States and worldwide;

  b. Agreeing to charge prices at certain levels and otherwise raise, fix, maintain or stabilize the prices of Compressor Products sold in the United States and worldwide;

  c. Agreeing to divide and allocate customers and markets in which Compressor Products are sold;

  d. Exchanging information about Compressor Products prices and sales volumes;

    e.    Monitoring and implementing the arrangements among cartel members; and

    f.    Selling Compressor Products to Plaintiff and members of the Class in the United States at the agreed upon and supra-competitive prices.

## EFFECTS

56.    The unlawful contract, combination or conspiracy alleged above had the following effects:

    a.    Prices for Compressor Products sold by defendants and their co-conspirators have been raised, fixed, maintained or stabilized at artificially high and non-competitive levels;

    b.    Plaintiff and other members of the Class paid more for Compressor Products that they purchased than they would have paid under competitive conditions; and

    c.    As a direct and proximate result of the illegal combination, contract or conspiracy alleged herein, Plaintiff and the members of the Class were injured and financially damaged in their businesses and property in amounts not presently determinable.

## INTERSTATE TRADE AND COMMERCE

57.    During the Class Period, defendants produced, manufactured, distributed and sold Compressor Products through the means of interstate commerce in a continuous and uninterrupted flow to customers located in states and nations to customers located in states and nations other than the states and nations in which defendants were located, including this district.

58. Among other unreasonable restraints on interstate trade and commerce, defendants' combination and conspiracy artificially raised the price of Compressor Products and deprived Plaintiff and the Class of the benefits of free and open competition in the market for Compressor Products throughout the United States.

## FRAUDULENT CONCEALMENT

59. Throughout the Class Period, defendants and their co-conspirators fraudulently concealed their unlawful conspiracy, combination and contracts from Plaintiff and members of the Class.

60. During the Class Period, Plaintiff had no knowledge of defendants' unlawful combination or conspiracy.

61. Defendants' wrongful conduct was carried out in part through means and methods, which were designed to avoid detection, and which, in fact, successfully precluded detection. Defendants undertook affirmative acts of concealment of their combination or conspiracy.

62. Because the contract, combination or conspiracy was kept secret by defendants and their co-conspirators, Plaintiff and other class members, despite exercising due diligence, did not and could not have discovered defendants' unlawful combination or conspiracy at any earlier date.

63. As a result of defendants' and their co-conspirators' concealment of the conspiracy, the applicable statute of limitations governing Plaintiff's right of action has been tolled.

## COUNT I

### Violation of Sherman Act Section 1, 15 U.S.C. § 1

64.     Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in the preceding paragraphs of this complaint.

65.     Beginning at least as early as January 1, 1996 and continuing until at least February 16, 2009, defendants and their co-conspirators entered into a continuing combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 by artificially reducing or eliminating competition in the United States for Compressor Products.

66.     In particular, defendants have combined and conspired to raise, fix, maintain or stabilize the prices of Compressor Products sold in the United States.  Defendants also combined and conspired to allocate customers and markets in which Compressor Products are sold.

67.     As a result of defendants' unlawful conduct, prices for Compressor Products were raised, fixed, maintained or stabilized in the United States at a level higher than they would have been in the absence of the anti-competitive conduct alleged in this complaint.

68.     For purposes of formulating and effectuating their combination or conspiracy, defendants and their co-conspirators did those things they combined or conspired to do, including:

      a.     Participating in meetings and conversations to discuss the prices and supply of Compressor Products;

      b.     Communicating to fix prices;

      c.     Agreeing to manipulate the prices and supply of Compressor Products sold in the United States;

      d.      Conspiring and agreeing to allocate customers and markets in which Compressor Products are sold;

      e.      Issuing price announcements and price quotations in accordance with the agreements reached;

      f.      Selling Compressor Products to customers in the United States at noncompetitive prices; and

      g.      Providing false statements to the public to explain increased prices for Compressor Products.

69.     As a direct and proximate result of defendants' scheme, Plaintiff and the members of the Class have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined. Plaintiff's injuries consist of paying higher prices to purchase Compressor Products than it would have paid absent defendants' conduct. Plaintiff's injuries are of the type the antitrust laws were designed to prevent and flow from that which makes defendants' conduct unlawful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests:

A.     That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and determine that Plaintiff is an adequate class representative;

B.     That the combination or conspiracy, and the acts done in furtherance thereof by defendants, be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.     That judgment be entered for Plaintiff and members of the Class against

defendants for three times the amount of damages sustained by Plaintiff and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees;

D. That defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, continuing to engage in the anticompetitive conduct described herein; and

E. That Plaintiff and members of the Class have such other, further and different relief as the case may require and the Court may deem just and proper under the circumstances.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all of the claims asserted in this complaint so triable.

Respectfully submitted,

DATED: August 17, 2009

*/s/ Michael J. Boni*
Michael J. Boni
Joanne Zack
Joshua D. Snyder
**BONI & ZACK LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: (610) 822-0200
Facsimile: (610) 822-0206

Michael D. Donovan
**DONOVAN SEARLES, LLC**
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067
Facsimile: (215) 732-8060

19

Jonathan Shub
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 553-7980
Facsimile: (215) 851-8029

Oren Giskan
**GISKAN SOLOTAROFF ANDERSON & STEWART LLP**
11 Broadway, Suite 2150
New York, New York 10004
Telephone: (212) 847-8315
Facsimile: (646) 520-3237

*Attorneys for Kohlder Manufacturing Company, Inc.*